**In re Dorothy C. BURKETTE, Debtor.**

**No. 00–01313.**

United States Bankruptcy Court,
District of Columbia.

April 24, 2002.

John R. Garza, Rockville, MD, R. Manny Montero, Rockville, MD, for debtor.

Linda M. Correia, Washington, DC, for Chapter 7 Trustee.

### DECISION RE TRUSTEE'S OBJECTION TO EXEMPTION

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The court will overrule the Objection to Debtor's Exemption ("Objection") filed by the chapter 7 trustee.

The Objection challenges the debtor Burkette's exemption of her individual retirement accounts ("IRAs"). The parties have agreed to the court's deciding the matter on stipulated facts. Burkette contends that in light of her forthcoming retirement and precarious financial condi-

tion, the IRAs are reasonably necessary for her support within the meaning of 11 U.S.C. § 522(d)(10)(E). The trustee challenges the exemption because the debtor is not currently retired and drawing on the account for retirement needs, and, alternatively, because payments under the IRAs are not reasonably necessary for her support.

### I

Section 522(d)(10)(E) provides for the following exemption:

> (10) The debtor's right to receive—
>
> (E) a payment under a stock bonus, pension, profit sharing annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
>
> (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose,
>
> (ii) such payment is on account of age or length of service; and
>
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

### II

At the time of the filing of the stipulation, Burkette was 56 years of age; she is presently 57 years of age. Although objecting to the IRA's exemptibility under § 522(d)(10)(E), the trustee has not specifically argued that Burkette has a right to withdraw the funds from the IRAs[1] now,

---

1. The Internal Revenue Code defines an "individual retirement plan" as both an "individual retirement account," typically referred to as an "IRA" and an "individual retirement annuity." *See In re Hall*, 151 B.R. 412, 427 (Bankr.W.D.Mich.1993) ("individual retire-

albeit subject to a 10% additional tax under 26 U.S.C. § 72(t).

Some courts hold that such a right of withdrawal disqualifies an IRA from being exemptible under § 522(d)(10)(E) (or similar state statutes) because the right to payment is not "on account of" age. *In re Huebner*, 986 F.2d 1222, 1224–25 (8th Cir. 1993) (Iowa statute modeled after § 522(d)(10)(E)), *cert. denied*, 510 U.S. 900, 114 S.Ct. 272, 126 L.Ed.2d 223 (1993); *In re Skipper*, 274 B.R. 807, 813–20 (Bankr.W.D.Ark.2002); *In re Bowder*, 262 B.R. 919 (Bankr.D.Minn.2001); *In re Zott*, 225 B.R. 160, 168–172 (Bankr.E.D.Mich. 1998); *In re Evenson*, 165 B.R. 27 (Bankr. E.D.Mich.1994); *In re Iacono*, 120 B.R. 691, 694 (Bankr.E.D.N.Y.1990); *In re Pauquette*, 38 B.R. 170, 174 (Bankr.D.Vt. 1984).[2] *See also Clark v. O'Neill (In re Clark)*, 711 F.2d 21, 24–25 (3d Cir.1983) (Becker, J., concurring on the basis that the "on account of" language of § 522(d)(10)(E) prevented exemption of a Keogh plan fund because the debtor was entitled to the funds immediately based on the plan having terminated).

However, *Carmichael v. Osherow (In re Carmichael)*, 100 F.3d 375, 378 (5th Cir. 1996), holds to the contrary. *Accord, In re Brucher*, 243 F.3d 242 (6th Cir.2001); *Farrar v. McKown (In re McKown)*, 203 F.3d 1188 (9th Cir.2000); *Dubroff v. First Nat'l Bank of Glens Falls (In re Dubroff)*, 119 F.3d 75 (2d Cir.1997); *Jurgensen v. Chalmers*, 248 B.R. 94 (W.D.Mich.2000).[3]

A debtor's right to withdraw from an IRA before age 59½, albeit with a 10% additional tax, is property of the estate, as is the right to make withdrawals from the account without such additional tax after age 59½ (11 U.S.C. § 541): a debtor's exemption of an account is an exemption of all of the rights in the account. So a trustee could argue that the right presently to make withdrawals from an IRA is not a right to receive a payment "on account of illness disability, death, age or length of service," and hence that right under the IRA is not exemptible. However, *Carmichael* reasons that a right to withdraw on account of age is a right to payment under an IRA "on account of ... age" under § 522(d)(10)(E), and the statute does not say that this must be the only basis upon which a withdrawal can be made.

*Carmichael*, 100 F.3d at 379, additionally points to profit sharing plans as containing similar provisions for early withdrawals with a penalty as evidence that an IRA ought not be disqualified as a "similar plan" on the basis of the right to early withdrawal with a penalty. However, *Carmichael* fails to address whether that type

---

ment accounts and individual retirement annuities are subclasses of a broader group of investment vehicles entitled individual retirement *plans* " (emphasis in original)). Because the distinction between an individual retirement account and an individual retirement annuity is immaterial to the court's decision, the court's discussion of IRAs will apply to individual retirement annuities as well.

**2.** *See also Eilbert v. Pelican (In re Eilbert)*, 162 F.3d 523 (8th Cir.1998) (construing Iowa statute modeled on § 522(d)(10)(E) and holding that, even though the debtor purchased the annuity after age 59½, the annuity was nonexemptible because the contract imposed no age restriction and was purchased from an inheri-

tance). Here, there is no evidence that Burkette received her IRA from other than her wage earnings. Moreover, *Eilbert* did not address whether the source of acquisition of an IRA is relevant only for purposes of a fraudulent conveyance attack directed to the exempted IRA. *See Hall*, 151 B.R. at 427 n. 39.

**3.** Two of those cases addressed exemption of IRAs under state exemption laws similar to § 522(d)(10)(E): *Dubroff* considers whether an IRA is exempt under New York law and *McKown* considers whether an IRA is exempt under California law.

of a provision in a profit sharing plan would disqualify the right to payment under the plan from § 522(d)(10)(E) exemption based on the right to payment not being "on account of" age (or other criterion listed in § 522(d)(10)(E)'s "on account of" clause).[4]

■ The court finds it unnecessary to resolve this issue because the record does not establish any facts that would require this court to rule against Burkette if the court viewed *Huebner* as correct. Under F.R.Bankr.P. 4003(c), the trustee has the burden to demonstrate that the conditions of the claimed exemption are not met, and he has not adduced evidence on this issue.

The parties have only stipulated that if the monies are withdrawn from the IRAs, Burkette or the bankruptcy estate would incur a significant tax liability. The court has no idea exactly what the parties mean by that stipulation. The regular income tax would apply even if the IRA were withdrawn after age 59½. *See* 26 U.S.C. § 408(d)(1). The parties could simply be saying that if the IRAs are all withdrawn at one time (and if that were permissible under the IRA contracts, something they have not addressed), the resulting regular income tax, because of the large amount of the withdrawal of all funds at one time, would be a "significant tax liability." Alternatively, the parties might have in mind that a withdrawal before age 59½ generally would trigger a 10% additional tax under 26 U.S.C. § 72(t). However, the parties have not stipulated whether the debtor could make a withdrawal, under the terms of the IRA contracts, prior to age 59½.

Nor have they stipulated whether the debtor even has the right to make withdrawals in her discretion after age 59½, or whether instead withdrawals can only be made in fixed amounts based on her life expectancy or in other amounts for illness, disability, or death. The court is unaware of any provision in the law that would prevent the IRA contracts from including such restrictions as well as a provision prohibiting Burkette from making a withdrawal prior to age 59½. *See Skipper*, 274 B.R. at 818 n. 8; *Evenson*, 165 B.R. at 30; *Zott*, 225 B.R. at 169.[5] The court will thus assume, in Burkette's favor, because the trustee has not shown otherwise, that the debtor cannot withdraw from the IRA accounts until age 59½, and indeed that her right to make withdrawals even after age 59½ is restricted to periodic payments

---

4. That is, *Carmichael* may blur two distinct requirements of § 522(d)(10)(E) arguably applicable to both IRAs and profit sharing plans: the payment (1) must be under one of the enumerated plans, and (2) must be "on account of illness, disability, death, age, or length of service." However, in *Cilek v. Dairyland Insurance Agency, Inc. (In re Cilek)*, 115 B.R. 974, 989 (Bankr.W.D.Wis.1990), the court held that "[t]he phrase 'on account of' only modifies the term 'contract'; the phrase 'on account of' does not modify the phrase 'stock, bonus, pension, profit sharing, annuity, or similar plan.'" In response to *Cilek*, a trustee could argue that if Congress so intended, it could have written "or similar plan, or a contract on account of...." The lack of commas separating the term "similar plan" and the clause "or contract," and the absence of any reason why Congress might have viewed

"similar plan" or "contract" to be treated differently is indicative that the phrase "on account of" does modify the term "similar plan" as well as "profit sharing plan." *Cf. United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989).

5. Indeed, the Internal Revenue Code recognizes that an IRA account may call for periodic payments based on life expectancy and be exempt from the 10% additional tax even if a payment is received before age 59½. *See* 26 U.S.C. § 72(t)(2)(A)(iv). If the commencement of those payments were keyed to age, for example, based on retirement at age 55 as occasionally occurs, then it might be argued such right to payments qualifies as a right to payments under a "similar plan" on account of age.

based on life expectancy or withdrawals made because of illness or disability or death.

### III

■ Burkette contends that her IRAs constitute a "similar plan or contract," *citing Carmichael*, 100 F.3d at 375, and the three other court of appeals decisions that have followed *Carmichael.*[6]

Under this view, the retirement vehicles specifically listed in § 522(d)(10)(E) and IRAs share one similar characteristic, namely, they are a substitute for future earnings,[7] thereby making them "similar plans or contracts." In *Carmichael*, the Fifth Circuit determined that the debtor's IRA constituted a "similar plan or contract" pursuant to § 522(d)(10)(E). *Id.* at 378. Citing four reasons, the court first noted that the four types of plans or contracts listed in the statute are substitutes for future earnings:

> IRAs too are substitutes for future earnings in that they are designed to provide retirement benefits to individuals. The age limitation on withdrawal illustrates Congress' intent to provide income to an individual in his advanced years. To exempt an IRA as a "similar plan or contract," then is consistent with the treatment of other deferred compensation and retirement benefits.

*Id.*

Second, the court noted:

> [S]ubparagraph (d)(10)(E)(iii) specifically denies an exemption to those "similar plans or contracts" that come within the proscription of (d)(10)(E)(i) and (ii) and also fail to qualify under, *inter alia*, IRC § 408, a provision dealing exclusively with IRAs. This express Code-section reference to IRAs in the exception makes inescapable the conclusion that at least some—if not all—IRAs were intended to be included in the phrase "similar plan or contract." Were that not so, there would be no exempt § 408 plans or contracts from which non–§ 408 plans or contracts could be exceptions.

*Id.*[8]

Third, the court found that the preclusion of an IRA exemption would effectively penalize self-employed individuals who are unable to hold their retirement plans in an employer-sponsored plan such as a 401(k):

> This result would be antithetical to Congress' solicitude for retirement benefits for self-employed individuals. By analogizing the treatment of IRAs to Congress' treatment of other retirement plans in § 522(d)(10)(E), we find it more than plausible to infer that Congress intended for IRAs to be treated similarly for purposes of exemption. Indeed, to hold otherwise would create a trap for the unwary in those frequent instances in which funds from other exempt plans are 'rolled over' into IRAs when those other plans terminate or when employment ceases.

*Id.*

Fourth, the court found that "exempting IRAs comports with the very policy fur-

---

**6.** *See also In re Cilek*, 115 B.R. 974 (IRA shares same characteristic of providing future wages as other plans enumerated in § 522(d)(10)(E) and like pension plans are designed to defer income upon retirement); *In re Marsella*, 188 B.R. 731 (Bankr.D.R.I. 1995) (citing *Cilek* with approval); *Hermes v. Ribitwer (In re Hermes)*, 239 B.R. 491, 495 (E.D.Mich.1999).

**7.** This characterization is apparently derived from the scant legislative history concerning § 522(d)(10)(E) which characterizes the benefits enumerated in the section as being "akin to future earnings."

**8.** *See also Hall*, 151 B.R. at 425.

thered by exemptions—providing the honest debtor with a fresh start. More specifically, exempting IRAs furthers the policy behind the pension exemption—protecting a debtor's future income stream." *Id.* The court agrees with *Carmichael* that an IRA is a "similar plan" within the meaning of § 522(d)(10)(E).

## IV

■ The trustee's first argument focuses on the initial language contained in § 522(d)(10): "the debtor's right to receive." Some courts hold that because the debtor does not have a **present** right to payment, the exemption claim does not fall within the purview of § 522(d)(10)(E). In *Clark*, 711 F.2d at 21, two judges of a three-judge panel advanced this reasoning in determining that the debtor's Keogh plan was not exempt under § 522(d)(10)(E). The court found that the purpose of exemptions is to give the debtor a fresh start by providing the debtor with the basic necessities of life so as not to leave the debtor destitute and a public charge. Accordingly, "[t]he exemption of present Keogh payments, to the extent they are necessary for the support of the debtor, is consistent with this goal. The exemption of *future* payments, however, demonstrates a concern for the debtor's long-term security which is absent from the statute." *Id.* at 23 (emphasis original). Although the plan at issue in *Clark* was a Keogh plan, the court's reasoning has been adopted by numerous courts in determining that an IRA is not exempt under § 522(d)(10)(E).[9] *See also, In re Chick*, 135 B.R. 201, 202 (Bankr.D.Conn.1991); *In*

*re Heisey*, 88 B.R. 47, 51 (Bankr.D.N.J. 1988).

On the strength of the reasoning in *Carmichael* and *Brucher*, the court believes that an IRA need not be presently payable for age-related purposes in order to be exempt under § 522(d)(10)(E). In examining the express language of the statute, the exemption pertains to the debtor's right to receive a payment under a similar plan or contract on account of illness, disability, death, age or length of service. Contrary to the court's finding in *Clark*, § 522(d)(10)(E) does not limit the debtor to a present right to receive a payment from a retirement plan and the court will not inject that requirement into the statute. The retirement plans described in § 522(d)(10)(E) are by nature plans which accumulate funds that are to be paid in the future (in most instances as a substitute for future wages), and an IRA is a retirement vehicle that enables an individual who may not have the opportunity to participate in an employer-sponsored plan to accumulate retirement income. The statute places no limitation on when the receipt of the retirement benefit must take place, although Congress could have created a limitation by specifically limiting the exemption to a present right to receive the funds.

Thus, a right to control the account is not a characteristic which renders an individual retirement account dissimilar to at least one plan listed in § 522(d)(10)(E).

## V

■ Notwithstanding the determination that an IRA is not automatically in-

---

9. Although the Third Circuit has not issued a decision concerning whether an IRA is exempt under § 522(d)(10)(E), in *Velis v. Kardanis*, 949 F.2d 78 (3d Cir.1991) the Third Circuit suggested that it would continue to follow the "present right to payment" approach. In *Velis*, the debtor was 63 years old and was thus able to withdraw funds from his IRA without penalty. The court noted that "as a present entitlement" the IRA was "susceptible to possible exemption under § 522(d)(10)(E)." *Velis*, 949 F.2d at 82.

**394**

capable of exemption pursuant to § 522(d)(10)(E), the debtor's IRAs are exempt under § 522(d)(10)(E) only to the extent they are reasonably necessary for the debtor's support. In making that determination courts typically examine the following factors:

(1) Debtor's present and anticipated living expenses;

(2) Debtor's present and anticipated income from all sources;

(3) Age of the debtor and dependents;

(4) Health of the debtor and dependents;

(5) Debtor's ability to work and earn a living;

(6) Debtor's job skills, training and education;

(7) Debtor's other assets, including exempt assets;

(8) Liquidity of other assets;

(9) Debtor's ability to save for retirement;

(10) Special needs of the debtor and dependents;

(11) Debtor's financial obligations, e.g., alimony or support payments.

*In re Flygstad,* 56 B.R. 884, 889–90 (Bankr.N.D.Iowa 1986)[10]; *In re Hoppes,* 202 B.R. 595, 599 (Bankr.N.D.Ohio 1996) (employing same factors as *Flygstad* ).

In considering the above factors, the court finds that both of the debtor's IRAs are reasonably necessary for her support. The debtor is currently 57 years of age and plans to retire at age 66. Her current life expectancy is age 87. The debtor's currently monthly income is $2013.33 and her monthly expenses, as reflected in Schedule J, are $2,024.00. Her only monthly savings consist of an automatic pay deduction to her federal Thrift Savings Plan in the amount of $43.33. Upon retirement, the debtor's monthly income will be approximately $2,171.00 and her monthly expenses will be $2,534.00. Thus, the debtor will experience a shortfall of $363.00 per month upon retirement. In order to cover the full projected shortage, the debtor would need an additional retirement fund in the amount of $91,476.00. The debtor could build this fund if she presently contributed approximately $352.00 per month for the next ten years, however, she does not have the excess monthly funds to do so. The value of the IRAs as of March 2, 2001 (the date of the filing of the parties' stipulation of facts) was $23,642.68.

The debtor's current monthly income is slightly less than her current expenses and her anticipated income upon retirement will be inadequate to meet all of her expenses given that the debtor will experience a shortfall of $363 per month. Thus, the debtor is unable to generate sufficient income to meet both her present and future needs. The trustee erroneously claims that the debtor can save $295 per month based upon the cash flow analysis prepared by the debtor's expert. However, the cash flow estimate was based upon a monthly cash flow of $2,995 which is $981.67 more than the debtor's current monthly income.[11] Clearly, the debtor's

10. In formulating these criteria, the *Flygstad* court examined § 6(B) of the Uniform Exemption Act which defines "reasonably necessary property" as:

Property required to meet present and anticipated needs of the debtor and his dependents as determined by the court after consideration of the debtor's responsibilities and all of the present and anticipated property and income of the debtor including that which is exempt.
*Flygstad,* 56 B.R. at 889.

11. As noted above, the debtor is able to save a modest $43.33 per month by contributing to her employee retirement account. That modest savings was taken into account by the

current employment situation will not generate sufficient income to enable her to meet her retirement needs.

The debtor's advanced age is a significant factor bearing upon the court's decision. The debtor is currently 57 years old. Although the debtor is not due to retire until age 66, her retirement is not far off so that "any reduction in her retirement assets represents a serious threat to the debtor's financial well-being during her retirement years." *In re Webb*, 189 B.R. 144, 146 (Bankr.S.D.Ohio 1995) (although debtor had monthly excess income of $150, the debtor's IRA in the amount of $10,672 was exempt where debtor was 52 years old and it would take many years for debtor to replace the IRA funds); *In re Savage*, 248 B.R. 573, 576 (Bankr.E.D.Ark.2000) (debtors entitled to retain IRA in the amount of $65,000 in view of the debtors' life expectancies and current ages of 56 and 59 which would not enable them to work a sufficient number of years to fund a new retirement plan); *In re Marsella*, 188 B.R. 731 (Bankr.D.R.I.1995) (debtor's IRA in the amount of $20,121 exempt where debtor was 58 years old).

With respect to the debtor's health, the parties have not stipulated to any facts, although the debtor has attached to one of her filings (Docket Entry No. 32) several estimates of the projected cost of future dental work in the amount of $20,000.00. The trustee argues that the court should not treat this information as evidence because the parties did not stipulate to this fact. While it is reasonable to assume that the debtor will incur significant medical and dental expenses as she gets older, the court's decision is the same even without any information as to the debtor's future medical or dental expenses.

With respect to the debtor's ability to work and earn a living, the debtor is currently employed and plans to retire at age 66. Her employment does not afford her any opportunity to dramatically increase her income. Although the parties did not provide any detail as to the debtor's job skills, training and education, the debtor does not appear to be in a profession that would afford her significant upward financial mobility.

The debtor's schedules do not reveal any assets that would enable her to meet her anticipated retirement needs. The debtor's residence is encumbered with a first and second mortgage and has equity in the amount of $5,469.00. The debtor also has a savings account in the amount of $6,500.00 and an automobile which is 13 years old and very likely will be in need of repair. These assets do not make up the shortfall that the debtor will experience upon retirement. As previously noted, the debtor is unable to make the monthly contributions needed to build a $91,476.00 retirement fund to meet her basic expenses during her retirement years. Her current assets of $11,969.00 account for only 34 months of the needed contributions thereby leaving the debtor with a substantial shortfall.

Based upon the evidence provided by the parties, the debtor has no ability to generate the pool of money that she will need for her reasonable sustenance upon retirement and given the analysis above, the court finds that Burkette's IRAs are reasonably necessary for her support.

## VI

Accordingly, the trustee's objection to Burkette's exemption of the IRAs will be overruled. The court's order follows.

---

parties in their stipulation as to the debtor's future monthly shortfall of $363.