# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 00-6088 MN

---

| | | |
|---|---|---|
| In re:  Estella W. Andersen and | * | |
| Harry R. Andersen, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Estella W. Andersen | * | Appeal from the United States |
| Harry R. Andersen, | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| Charles W. Ries, | * | |
| | * | |
| Appellee. | * | |

---

Submitted: January 24, 2001
Filed: March 13, 2001  (Corrected April 5, 2001)

---

Before KOGER, Chief Judge, SCHERMER, and SCOTT, Bankruptcy Judges.

---

SCOTT, Bankruptcy Judge

## I.  Factual Background

In 1986, at the age of 58, Estella Andersen received an inheritance.  Since her place of employment offered her no pension or retirement plan, she prudently used the inheritance to purchase an annuity, remitting $40,000 in a single payment.  It is not disputed that she intended that this annuity contract be in lieu of a retirement plan. In 1991, nearing retirement age, she made the required election on the annuity to state the date on which she would begin receiving the payments.  When she made the election, she lost her

ability to withdraw, settle or surrender the contract's value. Her only right under the contract after the election was to receive the monthly payments and to change the beneficiary entitled to receive payments if she died before December 19, 2006. Shortly thereafter, in 1992, at the age of sixty-four, she retired and began receiving her monthly annuity payments in the amount of $335 per month.

At the time she and her husband filed their chapter 7 bankruptcy case, nearly seven years later, in December 1999, the debtors were seventy-two and seventy-nine years of age. They live modestly, spending less than $1,300 per month on their living expenses, and are entirely dependent upon their Social Security income and Estella Andersen's small annuity. Together, they receive monthly benefits totaling approximately $1,350.

Under the terms of the annuity contract, Estella Andersen will receive $335 per month for the remainder of her life, and, if she dies before December 19, 2006, payments will be made to her beneficiary until that date. She may not surrender the annuity or obtain loans or other withdrawals from the annuity fund. Once the annuity payments began, she had no options regarding the payments but to collect them and no access to the corpus of the annuity. She has discretion only to alter the beneficiary.

When they filed their chapter 7 case, the debtors utilized the federal exemptions established under section 522(d), claiming the annuity as exempt pursuant to section 522(d)(10)(E), which provides that the following may be exempted:

(d)(10) The debtor's right to receive –

(E) a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor ***

Thus, under this paragraph, debtors are entitled to exempt payments in the nature of retirement benefits to the extent they are reasonably necessary for support. The trustee objected to the claim of exemption, asserting that the right to the payments was not truly in the nature of an annuity or similar plan or contract, but, rather, that the underlying contract was merely an investment or savings device which could not be exempted. The trustee made no attempt to assert that the annuity was not reasonably necessary for the debtors' support. The bankruptcy court concluded that the debtors were not entitled to claim the annuity

2

as exempt because of constraining language in Eilbert v. Pelican (In re Eilbert), 162 F.3d 523 (8th Cir. 1998). Specifically, the bankruptcy court construed Eilbert to preclude exemption of an annuity purchased with an inherited asset.

## I I. The Standard of Review

Pursuant to Rule 8013, the court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and findings of law de novo. Thus, the specific findings of fact utilized to determine whether the contract at issue in this case is an annuity or "similar plan or contract," are questions of fact which we review under the clearly erroneous standard. However, in determining whether the bankruptcy court properly interpreted the case authority or correctly applied section 522(d)(10)(E) to the facts, our review is de novo. Cf. Jurgensen v. Chalmers, 248 B.R. 94 (W.D. Mich. 2000). Because we do not believe Eilbert v. Pelican (In re Eilbert), 162 F.3d 523 (8th Cir. 1998) compels the conclusion that the annuity is outside the bounds of section 522(d)(10)(E), we reverse the decision of the bankruptcy court.

## I I I. The Requirements of Section 522(d)(10)(E)

We begin our analysis with the understanding that exemption statutes must be construed liberally in favor of the debtor and in light of the purposes of the exemption. In re Wallerstedt, 930 F.2d 630, 631 (8th Cir. 1991). The exemption of payments under a pension, annuity, or similar plan, is intended to protect payments which function as wage substitutes after retirement. In re Caslavka, 179 B.R. 141, 143-44 (Bankr. N.D. Iowa 1995). In effect, they are payments intended to support basic living requirements during the time of life when earning capacity is limited by age, disability or illness. Id.

Under section 522(d)(10)(E), as interpreted by the United States Court of Appeals for the Eighth Circuit, there are essentially three separate conditions which must exist for a debtor to properly claim an income stream as exempt under section 522(d)(10)(E). See generally In re Eilbert, 162 F.3d at 527-28. However, it is the trustee's burden to demonstrate that these conditions do not exist in order to have the exemption disallowed. See Fed. R. Bankr. Proc. 4003(c). Payments are exempt only if (1) they are received pursuant to a "pension, annuity, or similar plan or contract," (2) "on account of illness, disability, death, age, or length of service," and (3) are reasonably necessary for the debtor's support or for the support of a dependent of the debtor. In this case, the trustee asserts that the first two requisites are not met.

## A. Payments under a Contract to Provide Retirement Benefits

The first issue for the court is whether the annuity contract constitutes a "pension, annuity, or similar plan or contract," i.e., a "contract to provide benefits in lieu of earnings after retirement, whether funded by the employer or purchased by the employee or the self-employed....or a plan created to fill or supplement a wage or salary void." Eilbert, 162 F.3d at 523 (8th Cir. 1998). The factual analysis of the Court of Appeals in Eilbert, as well as the more in-depth analysis in the opinion of the Bankruptcy Appellate Panel, Eilbert v. Pelican, 212 B.R. 954, 958-59 (B.A.P. 8th Cir. 1997), provide guidance for specific inquiries which may be utilized in making the determination. The Eilbert authorities advise that the court should examine the facts and circumstances surrounding the purchase of the contract, as well as the nature and contents of the contract. Thus, in focusing so narrowly upon the means by which the annuity was purchased, the bankruptcy court erred in its conclusion. We do not conclude that Eilbert mandates that any annuity purchased with an inherited asset in a single payment may not be claimed exempt. Rather, looking to the analysis performed in Eilbert, numerous factors may be considered. Specific queries may include the following:

* Were the payments designed or intended to be a wage substitute?

* Were the contributions made over time? The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy, not merely a recent change in the nature of the asset.

* Do multiple contributors exist? Investments purchased in isolation, outside the context of workplace contributions, may be less likely to qualify as exempt.

* What is the return on investment? An investment which returns only the initial contribution with earned interest or income is more likely to be a nonexempt investment. In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan. That is, will the debtor enjoy a windfall if she outlives her life expectancy? Is she penalized if she dies prematurely?

* What control may the debtor exercise over the asset? If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment.[1]

---

[1]This was the obstacle that the debtor in Huebner v. Farmers State Bank (Huebner), 986 F.2d 1222 (8th Cir.), cert. denied, 510 U.S. 900 (1993) could not overcome.

\*        Was the investment a prebankruptcy planning measure?  In this regard, the court may examine the timing of the purchase of the contract in relation to the  filing of the bankruptcy case.

Having concluded that these factors must be examined, we apply them to the undisputed facts of this particular case.[2]  It is undisputed that the payments were designed or intended to be a wage substitute as demonstrated by the trustee's stipulation that Estella Andersen purchased the contract in lieu of a retirement plan and that she had no other retirement benefits to look to other than social security.  Although Andersen had the right to withdraw the funds prior to the time she began receiving payments, once she began receiving payments, almost seven years before the filing of the bankruptcy case, she ceased having such rights. Rather, presently, and at the time the chapter 7 case was filed, her only right is to receive the monthly payments of $335.00, and, if she dies earlier than expected, her beneficiary may receive some of the funds.  It is also noteworthy that the debtor is entitled to the payments even if she lives longer than her life expectancy.  She is guaranteed these monthly payments for the remainder of her life, and, thus, if she lives longer than her life expectancy, her investment of her inheritance was indeed a prudent one.  If she dies earlier than anticipated, her beneficiary will receive the payments for only a short period of time.

Arguably, there are two factors which may work against the debtor:  the annuity was purchased with a single payment and there were no other contributors.  However, neither of these facts are determinative nor deserving of great weight in this situation because the debtor had no other opportunity through her employment to obtain a pension plan over time.  Her employer did not offer her that benefit. If the court were to construe the statute as precluding any retirement benefit from qualifying as one merely because it was purchased with an inheritance or other lump sum method, all persons who could not obtain retirement benefits through their place of employment would be excluded from obtaining the benefits of the

---

[2]Although the failure of the bankruptcy court to specifically address these factors might ordinarily require remand, the parties' stipulation to the facts and the virtual concession by the trustee of the fact that Mrs. Andersen purchased the annuity "intending it to be in lieu of a retirement plan," makes remand unnecessary. The facts in this case are not disputed, and many of the most relevant facts are determined from a document, the annuity contract. The Court of Appeals for the Eighth Circuit has noted that "remand is not necessary when the evidence is documentary, the facts are  undisputed, or the record presents no genuine issue of material fact." Brown v. Mt. Prospect State Bank (In re Muncrief), 900 F.2d 1220 (8th Cir. 1990).  Since all of these circumstances exist in this case, remand is not required.  See Streetman v. United States (In re Russell), 187 B.R. 287 (W.D. Ark. 1995).

exemption merely because they worked for a very small business or could not obtain such benefits for some other reason. A sixty-year-old widow who never worked outside the home might also be deprived. Whether there are multiple contributors should be afforded less weight in the analysis of these fact situations. Thus, the weight to be accorded these factors may vary with the specific circumstances.

While Eilbert is instructive on the factors which a court may utilize in making the determination of whether an annuity is in the nature of retirement benefits, the court is also mindful of the specific, indeed, rather egregious, facts presented in that case. In Eilbert, the elderly debtor was confronted with a large personal injury judgment and, to avoid paying this judgment, utilized benefits received as a result of her husband's death to purchase an annuity. She freely admitted that she purchased the annuity just before filing the chapter 7 case in order to cleanse her funds through the bankruptcy process. It was further undisputed that she had full and free access to the funds. Accordingly, it was not a difficult task to determine that the contract in Eilbert was not of the kind contemplated by the state statute being utilized to claim the annuity as exempt. Clearly, in Eilbert, the single premium investment was not akin to future earnings because the payments did not replace lost income, was not part of a long term retirement strategy, and was admittedly a prebankruptcy planning measure employed to defeat the valid claim of a creditor. Thus, although Eilbert is instructive in providing the factors for analysis, its facts are so markedly inapposite to this case that its conclusions, upon applying the statute to those facts, are distinguishable.

In light of the undisputed facts in this case, including the trustee's concession that the annuity was purchased as a retirement plan, the payments are ones made "under a stock bonus, pension, profit sharing, annuity, or similar plan or contract." The payments were intended to be a wage substitute in the debtor's retirement years, the debtor continues to receive payments even if she outlives her expected life span, she has no control over the assets, and there is no indication that the purchase of the annuity was by virtue of prebankruptcy planning. Indeed, many years passed between the purchase of the annuity and the filing of this chapter 7 case. Accordingly, under Eilbert, the debtor's right to receive payments constitutes a retirement plan within the ambit of section 522(d)(10)(E).

### B.   On Account of Illness, Disability, Death, Age, or Length of Service

The second issue is whether the payments are on account of the debtor's age. It is clear under Eilbert and Huebner v. Farmers State Bank (Huebner), 986 F.2d 1222 (8th Cir.), cert. denied, 510 U.S. 900 (1993), that it is insufficient that the debtor be aged when the annuity is purchased. That is, the fact that the debtor is near or at retirement age when the annuity is purchased does not create a presumption

that the payments are being made on account of the debtor's age. Rather, the date the benefit payments are to begin should be related to the debtor's age, Eilbert, 162 F.3d at 527-28 (8th Cir. 1998), and the debtor may not have access to or control over the timing of the annuity payments, Huebner, 986 F.2d at 1225.

The specific analysis required for this prong of the determination is found in Huebner v. Farmers State Bank (Huebner), 986 F.2d 1222 (8th Cir.), cert. denied, 510 U.S. 900 (1993). In Huebner, the debtor purchased an annuity and expected to begin receiving payments when he turned sixty-five. At the age of sixty-four, before he began receiving payments, however, he filed a chapter 7 petition in bankruptcy. Huebner defended his claim of exemption by asserting that since he had attained the age of sixty-four, and was therefore eligible to receive retirement benefits, the entitlement was "on account of" his age. The Court of Appeals rejected this argument, focusing heavily upon the debtor's "unfettered discretion to receive payments at any time under any of the three payment options." Huebner's access to and complete control over the timing of the annuity payments precluded a finding that the payments under the contract were on account of his age. Since the contract provided restrictions or conditions on the payment, Huebner's contract, even though he may have intended to utilize it as an annuity, was merely an investment device. Similarly, in Eilbert, the claim of exemption failed because the debtor, already beyond the age of seventy, selected a date only two months after the annuity's effective date, not one linked to her age, and she had complete discretion to make larger withdrawals or surrender the annuity for a lump sum distribution.

Estella Andersen's situation is in sharp contrast to both Huebner and Eilbert. Andersen purchased her annuity in 1986, thirteen years before the bankruptcy. She was required to make her election and begin receiving payments within ten years of purchasing the annuity.[3] In 1991, she determined that she would soon retire and, thus, made her election. Her annuity payments began in 1992, at the same time she retired. Moreover, the trustee concedes that the debtor purchased this annuity to serve "in lieu of a retirement plan."

---

[3]The record does not disclose the reasons for this requirement. Since she was already nearing retirement age when she purchased the annuity, it may be that IDS placed that requirement in the annuity. Alternatively, it may be a standard contract. In any event, since the trustee has the burden of proof in demonstrating that the debtor is not entitled to the exemption, we do not automatically conclude that the requirement that she make her election within a time certain creates a presumption that the contract is not an annuity – any more than the fact that the debtor was nearing retirement when she purchased the annuity creates a presumption that it was purchased "on account of" her age.

Finally, and determinative under <u>Huebner</u>, once those payments began, in 1992, she had no discretion as to the timing or amount of the payments and had no right to access the corpus.

As <u>Huebner</u> notes, the property Andersen is entitled to exempt is the right to receive a monthly payment, not the corpus. Thus, the situation in <u>Huebner</u>, in which the debtor had not begun receiving the payments and yet had discretion over the timing, amount, and withdrawals, does not exist. On the date of the filing of the bankruptcy petition, Andersen had only a right to receive payments for the term of her life; she had no control or discretion with regard to the payments or the fund. More importantly, when examining the claim of exemption in light of the purpose of the statute, the contract was purchased specifically to serve as a retirement benefit, <u>i.e.</u>, a benefit based on age. <u>Cf.</u> H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 361-62 (1977).

## I V. Conclusion

Estella Andersen purchased an annuity in order to be able to meet her basic living needs in her retirement years. The annuity was intended to be a wage substitute and the debtor exercises no control over the assets. She has only the right to receive payments over the entire course of the remainder of her life. The right to receive the payments is a pension plan, annuity, or similar plan on account of her age which she is entitled to claim exempt pursuant to section 522(d)(10)(E). Accordingly, the decision of the bankruptcy court sustaining the trustee's objection to exemption is reversed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH CIRCUIT