# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 02-6013WA

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Richard G. Rousey and | * | |
| Betty Jo Rousey | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Richard G. Rousey and | * | |
| Betty Jo Rousey | * | |
| | * | |
| Appellants, | * | Appeal from the United States |
| | * | Bankruptcy Court for the Western |
| v. | * | District of Arkansas |
| | * | |
| Jill R. Jacoway | * | |
| | * | |
| Appellee | * | |

_____

Submitted: August 30, 2002
Filed: September 13, 2002

_____

Before KRESSEL, SCHERMER and FEDERMAN, Bankruptcy Judges.

_____

KRESSEL, Bankruptcy Judge.

Richard and Betty Jo Rousey appeal from the bankruptcy court[1] order denying exemption of portions of their Individual Retirement Accounts under 11 U.S.C. § 522 (d)(10)(E). Because we think the bankruptcy court correctly applied Eighth Circuit precedents, we affirm.

## BACKGROUND

The material facts are not in dispute. The debtors, Richard and Betty Jo Rousey, filed a voluntary joint Chapter 7 petition on April 27, 2001, appellee Jill R. Jacoway was appointed to serve as trustee in their case. The debtors elected to use the bankruptcy exemptions provided by 11 U.S.C. § 522(b)(1)[2] and found in 11 U.S.C. § 522(d). Listed on the debtors' Schedule B were their ownership interests in two IRAs. Both debtors established their IRAs in the form of deposit accounts at the First National Bank of Berryville, Arkansas[3] from funds rolled over from their Northrop Grumman[4] Plans. Neither debtor, however, has deposited any further money into their IRA since the initial deposits that established their accounts. Both debtors have the unfettered ability to withdraw funds from their accounts.

---

[1] The Honorable Robert F. Fussell, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

[2] 11 U.S.C. § 522(b) permits a debtor to choose between the bankruptcy exemptions provided in § 522(d) and the exemptions under state law, unless a state "vetoes" the debtor's option to choose the bankruptcy exemptions. *Huebner v. Farmers State Bank, Grafton, Iowa (In re Huebner)*, 986 F.2d 1222, 1224 (8th Cir. 1993).

[3] Mr. Rousey established his IRA account in March of 1999. Mrs. Rousey established her IRA account in April of 1999.

[4] Northrop Grumman is the debtors' former employer.

The IRA owned by Richard Rousey totaled $42,915.32 at the time of bankruptcy filing. Mrs. Rousey's IRA totaled $12,118.16 at the time of filing. Their Schedule C claimed $5,033.00 of Richard Rousey's IRA exempt under 11 U.S.C. § 522 (d)(5)[5], and the remainder of $37,882.32 under 11 U.S.C. § 522(d)(10)(E). Betty Jo Rousey claimed as exempt $5,648.00 of her IRA under 11 U.S.C. § 522(d)(5) and the remainder of $6,470.16 under 11 U.S.C. § (d)(10)(E).

On August 3, 2001, the trustee filed an objection to the exemption claims and argued that the Rouseys are not entitled to claim exemptions of the IRAs pursuant to 11 U.S.C. § 522(d)(10)(E) in the total amount of $44,352.48. She asked that the non-exempt portions be turned over to her. The trustee does not object to the debtors' claimed exemption in the total amount of $10,681.00 pursuant to 11 U.S.C. § 522(d)(5). On February 13, 2002, the bankruptcy court entered its order sustaining the trustee's objection and granting her motion. The court determined that the IRAs did not qualify as "similar plans or contracts" under 11 U.S.C. § 522 (d)(10)(E) because the debtors had unfettered discretion to withdraw from the corpus. The court also determined that payments under the plans were not on account of illness, disability, death, age or length of service as required under that section. The debtors filed a timely appeal.

## DISCUSSION
### *Standard of Review*

"We review a bankruptcy court's conclusions of law de novo and its factual findings under the clearly erroneous standard." *Merchants Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999) (quoting *Sinclair Oil Co. v. Jones* (*In re Jones*), 31 F.3d 659, 661 (8th Cir. 1994)).

---

[5] 11 U.S.C. § 522(d)(5) allows the exemption of "any property" subject to the monetary limitations set out.

11 U.S.C. § 522(d)(10)(E) provides an exemption for:

> a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless (i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose; (ii) such payment is on account of age or length of service; and (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.

11 U.S.C. § 522(d)(10)(E). There are essentially three main requirements that a debtor must meet to properly claim as exempt payments from an investment plan/income stream: payments are exempt only if they (1) are received pursuant to a pension, annuity, or similar plan or contract; (2) are on account of illness, disability, death, age, or length of service; (3) are reasonably necessary for the debtor's support or for the support of a dependent of the debtor. *Andersen v. Ries (In re Andersen)*, 259 B.R. 687, 691 (8th Cir. B.A.P. 2001). To help define what encompasses the generic phrase "similar plan or contract" the court in *Eilbert v. Pelican*[6] used the interpretive canons

---

[6] The Eighth Circuit B.A.P. in *Elbert v. Pelican*, was interpreting Iowa Code § 627.6(8)(e). This section provided an exemption for a debtor's interest in a "payment or portion of a payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age or length of service." The Iowa Code section

*noscitur a sociis* (a term is known from its associates) and *ejusdem generis* (general words in an enumeration are construed as similar to more specific words in the enumeration). *Eilbert v. Pelican (In re Eilbert)*, 162 F.3d 523, 527 (8th Cir. 1998). These canons are employed "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Id*. at 527 (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)).The court in *Eilbert* used the specific term "pension" as a touchstone to help define the general term "annuity" and the phrase "similar plan or contract." As required by the Eighth Circuit we apply those interpretive canons here.

A pension is a retirement benefit paid regularly based on length of employment and amount of wages or salary, in other words, deferred compensation for services rendered. *Id*.; Blacks Law Dictionary 1134 (6th ed. 1990). Since the word pension is the more specific word, it restricts the meaning of "similar plan or contract" under 11 U.S.C. § 522(d)(10)(E). *Id*. This catchall provision includes within the exemption other types of retirement plans or investments that are "created to fill or supplement a wage or salary void." *Id*.; (quoting *Matter of Pettit*, 55 B.R. 394, 397-98 (Bankr. S.D. Iowa)), *aff'd*, 57 B.R. 362 (S.D. Iowa 1985). Congress described the federal exemption as exempting "certain benefits that are akin to future earnings of the debtor." H.R. Rep. 95-595, at 362 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6318. Thus, the purpose of exempting the right to payments under a pension, annuity, or similar plan is to protect payments which function as wage substitutes after retirement. *Eilbert*, 162 F.3d at 526-527. Under Eighth Circuit Court of Appeals precedent, the debtors' IRAs do not come within the purpose of the exemption provision and do not meet the definition of similar plan or contract because the payments from their IRA are not "similar" to pensions.

---

is very similar to the text in 11 U.S.C. § 522(d)(10)(E), and the Court's analysis of the Iowa Code section is useful in helping to interpret the similar text within § 522(d)(10)(E). Although the Iowa statute has now been changed, the analysis of its former language remains apropos.

We have listed a number of factors to help courts analyze this issue. First, in both *Andersen* and *Eilbert*, we stated that contributions made to an investment over time, rather than one lump sum, would make it more likely that the investment falls within the ambit of the statute. *Andersen v. Ries (In re Andersen)*, 259 B.R. 687, 691 (8th Cir. B.A.P. 2001); *Eilbert v. Pelican*, 212 B.R. 954, 958-959 (8th Cir. B.A.P. 1997). Neither Richard Rousey nor his wife Betty contributed any money to the IRA accounts other than the initial lump sum contribution that established their accounts.

Second, in *Andersen* and *Eilbert* we held that contributions made by multiple contributors, rather than investments purchased in isolation and outside the context of workplace contributions, are more likely to qualify as exempt under 11 U.S.C. § 522(d)(10)(E). *Andersen*, 259 B.R. at 691; *Eilbert*, 212 B.R. at 959. Although the money deposited in the debtors' IRA accounts were initially traceable to funds rolled over from a plan established with their former employer Northrop Grumman, once the debtors' employment terminated, all funds received from the Northrop Grumman plan became the property of the debtors who were free to dispose of such funds in whatever way they chose. The debtors, instead of using the funds to buy a car or take a vacation, decided to deposit the money into an IRA that gave them unfettered discretion to the corpus. At the time they made the lump sum contribution to establish their IRAs, they were the only contributors because the funds deposited were solely their own. Thus, there were no multiple contributors to the debtors' IRAs. Moreover, their accounts were established outside the context of workplace contributions.

Third, in *Andersen* and *Eilbert* we looked at the return on investment. An investment that returns only the initial contribution of the debtor with earned interest or income, no more and no less, is more than likely not an exempt investment. Yet those investments that compute payments based on the participant's life span and terminate upon his death are more likely to be exempt under 11 U.S.C. § 522(d)(10)(E). *Andersen*, 259 B.R. at 691; *Eilbert*, 212 B.R. at 959. The only return on

investment the debtors would likely receive are portions of the initial payment they made to establish their IRAs and any interest that may have accrued on that payment.

Finally, in *Andersen* and *Eilbert* we examined the amount of control the debtor exercises over the claimed asset. If the terms of the investment impose limitations[7] on the debtor's right to withdrawal, then it is more likely that the investment comes within the ambit of the statute. Yet if the debtor, at his discretion, is able to access the funds of his investment and designate the date of disbursement, subject only to contractual or tax penalties, then such an investment is less likely to be exempt under 11 U.S.C. § 522(d)(10)(E). *Andersen*, 259 B.R. at 691; *Eilbert*, 212 B.R. at 959. Both of the debtors admitted that their ability to access the funds of their IRAs were completely at their discretion and the only "limitation" on that access would be a ten percent tax penalty, which has not been regarded by the Eighth Circuit as a substantial limit to withdrawal. *Eilbert v. Pelican*, 162 F.3d 523, 528 (8th Cir. 1998).

*Reference to 26 U.S.C. § 408*

11 U.S.C. § 522(d)(10)(E)(iii) makes reference to 26 U.S.C. § 408 which is the provision of the Internal Revenue Service Code that deals exclusively with IRAs. The debtors argue that by virtue of this reference their IRAs were intended to be included in the phrase "similar plan or contract" and thus exempt under 11 U.S.C. § 522(d)(10)(E). The debtors cite the case of *Patterson v. Shumate*, 504 U.S. 753 (1992), among others, to support this argument.

The Supreme Court in *Patterson* stated that the "applicable non-bankruptcy law" text of 11 U.S.C. § 541(c)(2) applies to federal and state law. *Id*. at 759. Moreover, the Court stated that ERISA-qualified trusts are excluded from the

---

[7] We have held that the tax and contractual penalties that are triggered when the IRA funds are withdrawn before age fifty nine and a half may not necessarily be regarded as a limit to withdrawal. *Eilbert*, 212 B.R. at 959.

bankruptcy estate by virtue of ERISA's anti-alienation clause. *Id*. at 760. The Court, however, did not rule on the issue of whether investment plans qualifying for preferential tax treatment under 26 U.S.C. § 408 and established for the purpose of funding retirement income, but not specifically covered by ERISA's anti-alienation clause, would qualify for exemption under 11 U.S.C. § 522(d)(10)(E). What the Court stated in dicta, however, was that such investment plans could be exempted under 11 U.S.C. § 522(d)(10)(E) because that section of the Bankruptcy Code is broader than § 541(c)(2), and applies to more than merely ERISA-qualified plans containing alienation provisions. *Id*. at 762-763. Thus, the Supreme Court's statements in *Patterson* regarding exemption of IRAs is not very helpful to the debtors.

The debtors also cite *Carmichael v. Osherow (In re Carmichael)*, 100 F.3d 375, 378 (5th Cir. 1996), and *Dettmann v. Brucher (In re Brucher)*, 243 F.3d 242, 243 (6th Cir. 2001), among others[8], to support their proposition that the internal reference to 26 U.S.C. § 408 in 11 U.S.C. § 522(d)(10)(E) implies that IRAs were intended to be included in the phrase "similar plan or contracts." The Sixth Circuit in *In re Brucher*, quoting the Fifth Circuit in *In re Carmichael*, 100 F.3d at 378, stated:

> § 522 (d)(10)(E)(iii) specifically denies exemption to those "similar plans or contracts" that fail to qualify under § 408 of the Internal Revenue Code, a provision dealing exclusively with IRAs. This express Code-section reference to IRAs in the exception makes inescapable the conclusion that at least some–if not all–IRAs were intended to be included in the phrase "similar plan or contract." Were that not so, there would be no exempt § 408 plans or contracts from which non–§ 408 plans or contracts could be exceptions.

---

[8] The debtors also cite *In re Dubroff*, 119 F.3d 75 (2nd Cir. 1997) and *In re McKown*, 203 F.3d 1188 (9th Cir. 2000).

8

*In re Brucher*, 243 F.3d at 243. The rule adopted in these cases is often labeled the "Per Se Exemption"[9] and adoption of this rule requires expanding norms of statutory construction that many courts are unwilling to make. *In re Billy R. Skipper*, 274 B.R. 807, 817 (Bankr. W.D. Ark. 2002). Courts that have adopted the Per Se Exemption argue that holding otherwise would render the mention of 26 U.S.C. § 408 in subparagraph (d)(10)(E)(iii) of 11 U.S.C. § 522 surplusage. *Id*. Adopting the Per Se Exemption of IRAs, however, would also render the "similar plan or contract" language of § 522(d)(10)(E) surplusage in cases involving IRAs. *Id*.

Contrary to the interpretation given by some courts, there is nothing explicit within the Bankruptcy Code, the legislative history, or 11 U.S.C. § 522(d)(10)(E) itself which manifests Congressional intent to exempt IRA retirement plans in toto. In interpreting 11 U.S.C. § 522(d)(10)(E), we are mindful of the principle that exemption statutes should be construed liberally in favor of the debtor. *Wallerstedt v. Sosne (In re Wallerstedt)*, 930 F.2d 630, 631-632 (8th Cir. 1991). The liberal construction of exemption statutes, however, is not a license to circumvent legislative intent. As the Supreme Court in *Connecticut National Bank v. Germain* stated, "a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-254 (1992). When a statute's language is plain, the sole function of the courts is to enforce such language according to its terms, not to expand the statute's meaning. *Hartford Underwriters Insurance Company v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000); *see also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (stating where the statute's language is plain, "the sole function of the courts is to enforce it according to its terms.") (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). Thus IRA plans would still have to meet the requirements under 11 U.S.C. § 522 (d)(10)(E) in order for IRA funds to be exempt under that provision.

---

[9] It is hardly a "per se" rule. The opinion explicitly uses the word "some."

The premise of the "per se" rule seems to be that an IRA could never meet the "similar plan or contract" or "payable on account of" tests so somehow those tests must not apply, otherwise the reference to § 408 would have no significance. We think this legal assumption and the statutory analysis are both wrong. The types of IRA investments that the debtors could have chosen is extremely broad. They could have chosen to use it to purchase annuities that limited their access and started payments to them when they reached a certain age. Instead they chose to put it into a bank account, to which they had unlimited access. Secondly, as a matter of statutory construction, 11 U.S.C. § 522(d)(10)(E)(iii) is a *limitation* on the right to claim an exemption. We have trouble elevating a limitation into a new per se exemption.

*On Account of Illness, Disability, Death, Age or Length of Service*

The bankruptcy court determined that the debtors' right to payment from their IRAs is not on account of illness, disability, death, age or length of service as required by the statute and Eighth Circuit precedents. For example, in *In re Huebner*, the Eighth Circuit Court of Appeals stated that because Huebner had complete access and control over the withdrawal and the timing of his annuity payments, that any payments received were not on account of his age or any other of the triggering events within the statute. *Huebner v. Farmers State Bank, Grafton, Iowa (In re Huebner)*, 986 F.2d 1222, 1225 (8th Cir. 1993). Similarly, in *Eilbert v. Pelican*, the Eighth Circuit Court of Appeals stated that because the debtor had unfettered discretion to withdraw the funds from her annuity before age fifty nine and a half, subject only to a relatively modest ten percent federal tax penalty, the debtor's control over her annuity was not substantially restricted and consequently the payments were not on account of her age. *Eilbert v. Pelican*, 162 F.3d 523, 527-528 (8th Cir. 1998). The fact that the debtors in this case have complete discretion over the withdrawal of their IRA funds, subject only to a ten percent tax penalty, shows there is no substantial restriction to withdrawal and that payments of such funds are not on account of any factor listed in 11 U.S.C. § 522(d)(10)(E). The fact that the debtors have unfettered discretion to withdrawal

10

causes their IRAs to look less like exempt retirement plans and more like non-exempt bank savings accounts with favorable tax treatment. *Huebner v. Farmers State Bank, Grafton, Iowa (In re Huebner)*, 986 F.2d at 1225.

The debtors have argued that if we hold that their IRAs are not exempt under 11 U.S.C. § 522(d)(10)(E), we would be adopting a "per se" rule that all IRAs are not exempt under 11 U.S.C. § 522(d)(10)(E). This simply is not the case. As noted earlier not all IRAs are alike. While each case must be decided on its own facts, we do not think that either the bankruptcy court's ruling or our opinion constitutes a decision that an IRA could never be exempt.

CONCLUSION

The bankruptcy court correctly concluded that the debtors' Individual Retirement Accounts are not exempt under 11 U.S.C. § 522(d)(10)(E). The debtors' IRAs are not similar plans or contracts pursuant to the statute, nor are the payments under the IRAs on account of illness, disability, death, age or length of service. The judgment of the bankruptcy court is affirmed.

SCHERMER, Bankruptcy Judge concurring.

I concur in the holding that the debtors' Individual Retirement Accounts are not exempt under 11 U.S.C. § 522(d)(10)(E) based upon precedent of our Circuit. However, I would invite our Circuit to revisit this issue where, as here, the debtors' pensions would have been exempt had they filed their bankruptcy petition while employed by Northrop Grumman, but they are not exempt where the debtors filed after their employment ceased and they rolled over the proceeds of their Northrop Grumman pensions into IRAs. Each Circuit which has examined the issue has held that IRAs may be exempt under Section 522(d)(10)(E). *See In re Brucher*, 243 F.3d 242

(6th Cir. 2001); *In re McKown*, 203 F.3d 1188 (9th Cir. 2000); *In re Dubroff*, 199 F.3d 75 (2nd Cir. 1997); and *In re Carmichael*, 100 F.3d 375 (5th Cir. 1996).

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.