**IN RE: Loretta Dae JOLLY, Debtor.**

**Case No. 16–10824**

United States Bankruptcy Court,
M.D. North Carolina,
Greensboro Division.

Signed February 27, 2017

## ORDER SUSTAINING OBJECTION TO EXEMPTIONS

BENJAMIN A. KAHN, UNITED STATES BANKRUPTCY JUDGE

This case came before the Court for hearing on January 10, 2017, on Trustee's Objection to Debtor's Claim for Property Exemptions (the "Trustee's Objection to Exemptions") filed by Everett B. Saslow, Jr. ("Trustee"). Trustee appeared at the hearing. Jennifer A. Ledford appeared as counsel for Loretta Dae Jolly ("Debtor"). For the reasons stated herein, Trustee's Objection to Exemptions will be sustained.

### FACTS

Debtor filed her chapter 7 petition on August 8, 2016, and asserted an exemption under N.C. Gen. Stat. 1C–1601(a)(9) in a "Retirement Annuity: Prudential Retirement Accounts Through Geneos Wealth Management," with an exemption value of $178,694.80. [Doc. # 1, p. 19] (the "Annuity"). Trustee timely filed his objection to Debtor's exemptions on October 6, 2016. Trustee contends that the Annuity is not the type of annuity which falls within the contemplation of N.C. Gen. Stat. § 1C–1601(a)(9). The Court admitted into evidence the Prudential Annuity Contract [Plaintiff's Exhibit A] (the "Annuity Contract") for the Annuity and a prospectus for the Prudential Premier Retirement Variable Annuity B Series ("B Series"), Prudential Premier Retirement Variable Annuity L Series ("L Series"), Prudential Premier Retirement Variable Annuity C Series ("C Series") dated April 28, 2016 (the "Prospectus"). [Plaintiff's Exhibit B] (with various supplements dated November 14, 2016, October 27, 2016, September 20, 2016, September 13, 2016, August 16, 2016, August 8, 2016, July 1, 2016 (collectively, the "Prospectus Supplements")).[1]

Jennifer Adams Ledford, Higgins Benjamin PLLC, Greensboro, NC, for Debtor.

Everett B. Saslow, Jr., Greensboro, NC, pro se.

1. Exhibit A and Exhibit B contain numbered and unnumbered pages. Citations to these exhibits shall be to the numbered pages of the respective exhibit unless otherwise indicated.

Debtor purchased the Annuity from Prudential Financial for the price of $150,000 with her own funds, in a single transaction. The Annuity was issued by Pruco Life Insurance Company ("Pruco") on June 22, 2012. See Trustee's Exhibit A, p. 3. In response to requests from Trustee, Debtor admitted (and the Court so finds) the following: (1) the Annuity is not a qualified annuity; (2) the Annuity is a non-qualified annuity; (3) the Annuity is not tax-qualified under Section 401(a) of the Internal Revenue Code ("IRC"); (4) the Annuity is not subject to ERISA; (5) the Annuity is not a Roth retirement account as described in section 408A of the IRC; and (6) the amount paid to purchase the Annuity was not a rollover from a qualified retirement plan.

## DISCUSSION

 Exemptions should be liberally construed in favor of the Debtor. In re Grubbs, 325 B.R. 151, 154 (Bankr. M.D.N.C. 2005). As the objecting party, the burden of proof in this case is on Trustee. See Fed. R. Bankr. P. 4003(c). Trustee's burden must be established by a preponderance of the evidence. In re Man, 428 B.R. 644, 653 (Bankr. M.D.N.C. 2010). In carrying his burden of proof in this case, Trustee offered copies of the Annuity Contract and the Prospectus and Prospectus Supplements.

 North Carolina has opted out of the federal exemptions provided in 11 U.S.C. § 522(d). N.C. Gen. Stat. § 1C–1601(f) (2009) ("The exemptions provided in The

Bankruptcy Act, 11 U.S.C. § 522(d), are not applicable to residents of this State."). Therefore, Debtor is entitled to claim her exemptions only pursuant to 11 U.S.C. § 522(b)(3). Specifically, Debtor asserts that the Annuity is an exempt retirement account under § 522(b)(3)(A) and North Carolina's exemption statute.[2] North Carolina law provides an exemption for:

> [i]ndividual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the Internal Revenue Code, including individual retirement accounts and Roth retirement accounts as described in section 408(a) and section 408A of the Internal Revenue Code, individual retirement annuities as described in section 408(b) of the Internal Revenue Code, and accounts established as part of a trust described in section 408(c) of the Internal Revenue Code.

N.C. Gen. Stat. § 1C–1601(a)(9) (2009) (emphasis added).

Debtor concedes that the Annuity does not meet the definitions of a plan under sections 408(a), 408A, 408(b), or 408(c). Instead, Debtor argues that it qualifies for exemption under N.C. Gen. Stat. § 1C–1601(a)(9) because it is a "plan treated in the same manner as an individual retirement plan under the Internal Revenue Code." An "individual retirement plan" is defined in the IRC as an individual retirement account described in section 408(a) or an individual retirement annuity described in section 408(b). 26 U.S.C. § 7701(37). The Court must therefore determine

---

If reference is made to an unnumbered page, the referenced number refers to actual location in the exhibit of the applicable page by counting physical pages into the exhibit, including numbered and unnumbered pages. Exhibit A contains various supplements and riders that have separate names and separately numbered pages. Any reference to such

supplements or riders will be specified by the name of the applicable supplement or rider and the numbered page, if applicable.

**2.** 11 U.S.C. § 522(b)(3)(C) also provides an exemption for certain qualified retirement accounts. Debtor does not contend that the Annuity is exempt pursuant to this section.

whether the Annuity is treated in the same manner under the IRC as a section 408(a) IRA or section 408(b) retirement annuity.

On two separate occasions, this Court previously has considered whether an annuity created pursuant to Section 403(b) of the IRC is afforded sufficiently similar treatment to "an individual retirement plan" under the IRC to qualify under the North Carolina exemptions. See In re Grubbs, 325 B.R. 151 (Bankr. M.D.N.C. 2005); and In re Garner, Case No. 04-13618C-7G, 2005 WL 1288335 (Bankr. M.D.N.C. April 29, 2005). Since tax sheltered annuities created under § 403(b) of the IRC are not IRA's or annuities created under § 408(b) of the IRC, they do. not fall within the definition of "an individual retirement plan" under the IRC. Despite not meeting the definition of "an individual retirement plan" under the IRC, this Court found in both Grubbs and Garner that an annuity pursuant to section 403(b) of the IRC was a "plan treated in the same manner as an individual retirement plan," and therefore is exempt under North Carolina law.[3] In Grubbs and Garner, the Court identified the key characteristics of the tax treatments afforded by IRA's, Roth IRA's, and retirement annuities under § 403(b) of the IRC. See Grubbs, 325 B.R. at 155; and Garner, 2005 WL 1288335, at *3. As observed in Garner, contributions to a tax sheltered annuity under either § 408(b) or § 403(b) "have the effect of reducing the plan participant's taxable income for the year." Garner, 2005 WL 1288335, at *3. Similarly, contributions to an IRA are excluded from taxable income. Grubbs, 325 B.R. at 155. In order to be excluded from taxable income, contributions to tax sheltered annuities and IRA's

must fall under a certain annual limit. Garner, 2005 WL 1288335, *3 (citing 26 U.S.C. § 403(b) (non-profit annuities); and 26 U.S.C. § 219(a) (individual retirement plans)). The Court in Grubbs enumerated at least thirteen similarities between § 403(b) annuities and individual retirement plans under the IRC:

> (1) principal contributions and accrued interest are either excluded or exempted from gross income for purposes of taxation; (2) both allow for salary reduction agreements;[4] (3) both have caps on the maximum amount that may be contributed during a single year; (4) rollover contributions are accepted not only from other plans, but from an IRA to a Section 403(b) annuity and visa [sic] versa; (5) penalties apply for early withdrawal of funds; (6) excess contributions are taxed; (7) a participant's interest in both are not forfeitable; (8) both provide incidental death benefits; (9) neither is directly administered by the employee; (10) both have the same minimum and maximum ages at which funds may, and then must be withdrawn; (11) distributions are taxed when received; (12) interest earned on the annuity or IRA itself is exempt from taxation until distributed; and (13) either the employee or the employer may contribute money."

Grubbs, 325 B.R. at 155–57 (footnote omitted). The most important similarity this Court noted in Grubbs was that rollovers are permitted between section 403(b) annuities and section 408(a) IRAs. Id. at 157. Therefore, the Court held that these similarities were sufficient to make annuities created under § 403(b) of the IRC fall within the North Carolina exemption. Id.; and Garner, 2005 WL 1288335 at *4.

---

3. The Annuity here does not meet the requirements of 26 U.S.C. § 403(b), which is a retirement annuity created by a 501(c) tax-exempt organization.

4. Unlike the annuity in Grubbs, the Annuity Contract has no provision for salary reduction agreements.

In this case, as a non-qualified annuity, the Annuity lacks sufficient similarities in treatment to fall under the exemption for plans treated in the same way as retirement plans under the IRC, and any incidental similarities are far outweighed by dissimilarities. The Prospectus itself specifically recognizes that the Annuity is not subject to the same tax-favored status as retirement plans, stating, "[i]n general, as used in this prospectus, a Nonqualified Annuity ... is not associated with a tax-favored retirement plan." Prospectus, p. 97. As a non-qualified annuity, the Annuity does not share many of the favorable tax treatments of individual retirement plans under the IRC, nor does it have the same limitations. For example, unlike either type of IRA, Debtor's contributions to the Annuity were unlimited, and, in fact, occurred in a single $150,000 payment.[5] Unlike a traditional IRA, this contribution was made from after-tax dollars. Unlike a Roth IRA, earnings on the Annuity are taxed upon withdrawal. See Prospectus, p. 97.

Unlike an IRA, withdrawals from the Annuity could begin at Debtor's election only three years from the date the Annuity was issued. Also dissimilar to individual retirement plans, Debtor could elect to begin receiving annuity payments at any time, and there is no age at which her failure to take minimum distributions would result in the 50% excise tax that applies for early withdrawals from IRA's

and tax sheltered annuities. See Garner, 2005 WL 1288335, at *3 (citing 26 U.S.C. § 4974(a)).[6] Instead, the Annuity Contract provides that the Debtor "may choose an Annuity Date, an annuity option, and the frequency of annuity payments. [Debtor's] choice of Annuity Date and annuity option may be limited, depending upon your use of the Annuity. The Earliest Available Annuity Date and Latest Available Annuity Date as of the Issue Date are shown in the Annuity Schedule." Annuity Contract, p. 18. According to Debtor's Annuity Schedule, the Earliest Available annuity Date was three years from the issue date in 2012, and the Latest Available Annuity Date was "[t]he first day of the calendar month next following the oldest Owner's or Annuitant's 95th birthday." Id., p. 4.

There are additional significant dissimilarities between the Annuity and individual retirement plans that were not present in Grubbs and Garner. Unlike an annuity qualified under § 403(b), the Annuity is not an eligible account from which a rollover would be permitted into an individual retirement account. As observed by this Court in Grubbs, a rollover is a transfer of funds to a new investment of the same type, especially to defer taxes. Grubbs, 325 B.R. at 155, n. 7. A non-qualified annuity such as the Annuity is not among the types of accounts from which an eligible rollover may occur. Id.

There are two marginal similarities in the tax treatment between the Annuity

---

**5.** There were no tax consequences for the Debtor's purchase of the Annuity. In contrast, excess contributions to qualified plans are subject to a 6% tax for IRA's and a 10% tax for qualified annuities under 26 U.S.C. §§ 4973(a) and 4979, respectively. See Grubbs, 325 B.R. at 156 n.9.

**6.** Debtor purchased the Highest Daily Lifetime Income Benefit Rider to her Annuity Contract. See Annuity Contract, Highest Daily Lifetime Income Benefit Rider. Under this

rider, if the Annuity has not been previously surrendered, Debtor must take required minimum distributions beginning at age 70 ½. See Id. at 5; and Prospectus, p. 51. However, these required minimum distributions are contractual, and, since the Annuity is a non-qualified annuity, any failure to take such contractual minimal distributions would not be subject to excise tax under 26 U.S.C. § 4974(a), which by its terms is limited to qualified retirement plans.

and individual retirement plans under the IRC. Any amounts withdrawn from an individual retirement plan before the age of 59 ½ are subject to a 10% penalty, in addition to being taxed as ordinary income. See 26 U.S.C. § 72(t)(1) ("If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income");[7] 26 U.S.C. § 408(d)(1) ("any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee"). Similarly, the Prospectus states that, if Debtor withdraws funds from her Annuity prior to the age of 59 ½, the taxable portion (i.e. the gain) of that withdrawal could be subject to a 10% penalty. Prospectus, pp. 97–8. However, the penalty for early withdrawal from the Annuity applies only to the gain realized upon the original investment. Id., p. 98. Unlike IRA withdrawals, there is no penalty attributable to early withdrawals of the original cost basis, and any withdrawal of the cost basis of the Annuity is not taxable income. Id., p. 97. In contrast, all amounts withdrawn early from a retirement plan under the IRC are subject to a 10% penalty. As a non-qualified annuity, the tax treatment also is marginally similar to qualified plans in that taxes on the earnings are deferred until withdrawal. This similarity, however, would also be true of any normal stock investment that a debtor makes in that any appreciation in the value of the stock would not be subject to taxation until the stock were liquidated. Therefore, these marginal similarities are insufficient to establish that the Annuity is a retirement plan "treated in the same manner as an individual retirement plan" under the IRC.

The dissimilarities continue in the way in which qualified assets are held versus the assets underlying the Annuity. Assets held in retirement plans under the IRC must be held in trust. See 26 U.S.C. § 408(a) ("the term 'individual retirement account' means a trust created or organized by the United States for the exclusive benefit of an individual or his beneficiaries"). Unlike the assets held in trust in individual retirement plans, no trust was been created on behalf of Debtor in the funds underlying the Annuity, and the funds in the account are merely held in various other accounts legally and separately owned by Pruco. See Annuity Contract, p. 7. The funds in the accounts may be invested by Pruco in mutual funds or portfolios. Id. at 8. Also unlike investments in individual retirement plans, the Annuity assets may be invested in life insurance policies. Compare 26 U.S.C. § 408(a)(3) ("[n]o part of the trust funds will be invested in life insurance contracts"); with Prospectus, p. 14 ("The Portfolios are not publicly traded mutual funds. They are only available as Investment Options in … life insurance policies issued by insurance companies …. ").

Qualified individual retirement plan annuities are not forfeitable. See 26 U.S.C. § 408(a)(4). In contrast, Debtor could surrender the Annuity at any time by withdrawing the surrender value defined under the Annuity Contract. See Prospectus, p. 42 ("During the Accumulation Period, you can surrender your Annuity at any time, and you will receive the Surrender Value. Upon surrender of your Annuity, you will no longer have any rights under the surrendered Annuity.").

---

**7.** Under section 4974(c), a qualified retirement plan includes an annuity under section 403(b), and section 403(b)(11) prohibits distributions prior to age 59 ½.

Debtor and Trustee spent significant time disputing whether the Annuity is transferrable. Qualified annuities are not transferable. See 26 U.S.C. § 408(b)(1); 26 U.S.C. §§ 403(a)(1), 404(a)(2), and 401(a)(13). The Annuity Contract provides:

Generally, your rights in this Annuity may be transferred, assigned or pledged for loans. However, these rights may be limited, depending on your use of the Annuity. You may assign this Annuity before the Annuity Date. We reserve the right to reject any transfer, assignment or pledge at any time, on a nondiscriminatory basis. An assignment will take effect on the date the notice of assignment is received at our Service Office in Good Order. Any assignment we accept is subject to any transactions processed by us before we receive the notice of assignment. You may exercise these rights subject to the interest of any assignee or irrevocable beneficiary of record. We assume no responsibility for the validity or tax consequences of any assignment.

Annuity Contract, p. 21. The Annuity Contract permits Debtor to designate any owner, or multiple owners, of the Annuity, and to change the identity of the owner or owners. Id. at 9–10.

Debtor attempts to contest the alienability of the Annuity, relying on certain provisions of the Annuity Contract and the terms of the Prospectus. The Annuity Contract provides that "[t]o the extent permitted by law, no payment or value under this Annuity is subject to the claims of your creditors or those of any other Owner, any Annuitant, or any Beneficiary." Id. at 21. This provision is ineffective and begs the question. Debtor did not provide any applicable law that would permit private parties to create non-statutory exemptions by contractual agreement, nor did Debtor offer any independent legal basis for exempting the Annuity to the extent that it is not treated similarly to an IRA under the IRC. In any event, this provision does not purport to prevent transfer or alienation; it only purports to protect the Annuity from creditors, and then only "to the extent permitted by law." This section therefore does not end the inquiry, create a non-statutory exemption, or negate the specific section of the Annuity Contract permitting transfer and assignment of the Annuity.

Debtor also relies on the Prospectus and the Prospectus Supplements in her attempt to establish that the Annuity is inalienable. Pruco provided Debtor with the Prospectus and Prospectus Supplements four years after she purchased the Annuity. By their terms, the Prospectus and Prospectus Supplements cover multiple types of annuities, which may be utilized by the various owners in various manners, and for qualified [8] and non-qualified purposes. See Prospectus, p. 15 (unnumbered) of Exhibit B. The Prospectus covers both qualified and non-qualified annuities. Id. at 97 ("In general, as used in this prospectus, a Nonqualified Annuity is owned by an individual or non-natural person and is not associated with a tax-favored retirement plan."). It discloses that "[t]he tax considerations associated with an Annuity vary depending on whether the Annuity is (i) owned by an individual or non-natural person, and not associated with a tax-favored retirement plan, or (ii) held under a tax-favored retirement plan." Id. In this case,

---

**8.** The qualified annuities are categorically described in the Prospectus as annuities purchased in IRA's subject to sections 408(a) and 408(b) of the IRC, Roth IRA's under section 408A of the IRC, corporate pension or profit-sharing plans subject to section 401(a) of the IRC, H.R. 10 plans subject to section 401(a) of the IRC, tax sheltered annuities subject to section 403(b) of the IRC, or section 457 plans. Prospectus, p. 101.

the Annuity is not associated with a tax-favored retirement plan, and is not held under a tax-favored retirement plan, and Debtor concedes that the Annuity is a non-qualified annuity.

Under the section of the Prospectus that purports to prohibit the use of the Annuity for speculative investment, it states that Pruco "[c]urrently ... will not issue an Annuity, permit changes in ownership or allow assignments to certain ownership types, including but not limited to: corporations, partnerships and endowments. Further, we will only issue an Annuity, allow changes of ownership and/or permit assignments to certain ownership types if the Annuity is held exclusively for the benefit of the designated Annuitant." Id. at 27. It is unclear to the Court whether these provisions apply to all types of annuities covered by the Prospectus, or whether the provisions of a Prospectus delivered four years after the sale of the Annuity can contradict or limit the transfer terms of the Annuity.[9] Regardless, this limited restriction on transfer is purely contractual, and does not rise to the level of an anti-alienation provision recognized under the IRC. See e.g., 26 U.S.C. § 408(b)(1); 26 U.S.C. §§ 403(a)(1), 404(a)(2), and 401(a)(13); and 29 U.S.C. § 1056(d) (ERISA).

Finally, although not applicable in North Carolina, the exemption for retirement plans in the Bankruptcy Code under 11 U.S.C. § 522(d)(10) contains a similarly worded catch-all provision for retirement plans "similar" to those specifically listed.[10] Although not controlling, interpretations of "similarity" under § 522(d)(10) can be helpful in considering similarity for purposes of N.C. Gen. Stat. 1C–1601(a)(9). See Garner, 2005 WL 1288335, at *3–4 (citing Rousey v. Jacoway, 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005), for the proposition that annuities under section 403(b) serve the purpose of providing income that substitutes for wages in retirement, which is a similar purpose of tax sheltered plans). An examination of the cases interpreting § 522(d)(10) supports the Court's finding that the Annuity Contract in this case is not exempt.

In determining that an annuity under section 403(b) of the IRC was a plan treated the same as a retirement plan under the IRC, Judge Stocks determined that it was important that the underlying purpose of annuities under section 403(b) of the IRC was the same as retirement plans. Garner, 2005 WL 1288335, at *4. Judge Stocks found that both retirement plans under the IRC and annuities under section 403(b) of the IRC "serve the purpose of providing income that substitutes for wages in retirement." Id. Therefore, plans that have both the same tax favored treatment and serve the same purpose as retirement plans are more likely to be exempt under both North Carolina law and § 522(d)(10). Id.

In this case, the Annuity Contract not only does not receive the same tax favored treatment as retirement plans under the IRC for the reasons set forth above, but it also does not serve the same purpose as a

---

9. The Annuity Contract provides that the "Annuity, the Annuity Schedule, any riders, endorsements, schedule supplements, and amendments that are made part of this Annuity, are the entire contract. This Annuity may be changed or modified only in writing signed by our President, a Vice President, or Secretary." Annuity Contract, p. 21.

10. Section 522(d)(10) provides for an exemption in non-opt out states for "payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service to the extent reasonably necessary for the support of the debtor and any dependent of the debtor ...."

retirement benefit or replacement of income.

When deciding whether payments under an annuity or similar contract or plan were intended as retirement benefits or a replacement for income, courts "should examine the facts and circumstances surrounding the purchase of the contract, as well as the nature and contents of the contract[,]" and the following queries should be posited:

- Were the payments designed or intended to be a wage substitute?
- Were the contributions made over time? The longer the period of investment, the more likely the investment falls within the ambit of the statute and is the result of a long standing retirement strategy, not merely a recent change in the nature of the asset.
- Do multiple contributors exist? Investments purchased in isolation, outside the context of workplace contributions, may be less likely to qualify as exempt.
- What is the return on investment? An investment which returns only the initial contribution with earned interest or income is more likely to be a nonexempt investment. In contrast, investments which compute payments based upon the participant's estimated life span, but which terminate upon the participant's death or the actual life span, are akin to a retirement investment plan. That is, will the debtor enjoy a windfall if she outlives her life expectancy? Is she penalized if she dies prematurely?
- What control may the debtor exercise over the asset? If the debtor has discretion to withdraw from the corpus, then the contract most closely resembles a nonexempt investment.

In re Vickers, 408 B.R. 131, 139–40 (Bankr. E.D. Tenn. 2009) (quoting Andersen v. Ries (In re Andersen), 259 B.R. 687, 691 (8th Cir. BAP 2001)).

There is no evidence that this Annuity was purchased to be used as a wage substitute, and the circumstances of the case indicate that it was not. Debtor's contribution was made in a single payment "outside the context of workplace contributions," indicating that it was not "the result of a long standing retirement strategy, [rather than] merely a recent change in the nature of the asset." Debtor's return is variable and based upon the initial contribution with earned appreciation. Moreover, if the Debtor does not cash out and surrender the Annuity before her death, the Annuity will pay a death benefit to her beneficiaries, depending upon the timing of Debtor's election of an Annuity Date and her lifespan. Therefore, benefits potentially will last beyond her retirement and death for the benefit of her beneficiaries. Lastly, Debtor has the discretion to withdraw from the corpus. Therefore, all these factors weigh in favor of determining that the Annuity does not serve the same purpose as a retirement plan under the IRC.

The Annuity in this case is not qualified as any type of retirement account under the IRC, does not receive treatment that is the same as a retirement plan under the IRC, and does not serve the same purpose as a retirement plan under the IRC. Therefore, even construing the statute liberally in favor of Debtor, the Annuity is not the type of retirement plan exempt pursuant N.C. Gen. Stat. § 1C–1601(a)(9). For these reasons, the Court finds that Trustee has met his burden in this case and shown by a preponderance of the evidence that the Annuity does not meet the requirements of N.C. Gen. Stat. § 1C–1601(a)(9), and is a non-exempt asset.

Therefore, it is hereby ORDERED, ADJUDGED, AND DECREED that Trustee's Objection is SUSTAINED and Debtor shall surrender and turnover the Annuity to Trustee.

**SO ORDERED.**